IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANNA MARIA RUGGERIO, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 12-3343 (JBS/AMD) |
| v. | : | **OPINION** |
| CITY OF CAMDEN, et al., | : | |
| Defendants. | : | |

Appearances:

Thomas Bruno, II, Esq.
ABRAMSON & DENENBERG, PC
1315 Walnut Street, 12th Floor
Philadelphia PA 19107
    Attorney for Plaintiff

Joseph Fernando Marin, Esq.
CITY ATTORNEY'S OFFICE
520 Market Street, Suite 419
P.O. Box 95120
Camden, NJ 08101
    Attorney for Defendants

**SIMANDLE**, Chief Judge:

**I. Introduction**

    This matter is before the Court on a motion for summary
judgment brought by Defendants City of Camden, Patrolman Pasquale
Giannini, Sr. Detective Joseph Hoffman, and Lieutenant Wysocki.
[Docket Item 14.] Plaintiff Anna Maria Ruggerio alleges that
Defendants Giannini, Hoffman, and Wysocki used excessive force
against her when one or more of them punched her two or three
times in the head and knocked her to the ground when she was

outside of the Susquehanna Bank Center in Camden, N.J. The officers were responding to a fight, in which Plaintiff claims she did not participate. Defendant Giannini cited Plaintiff for disorderly conduct under the New Jersey criminal code, and she eventually pleaded guilty to a lesser charge of disorderly conduct under the municipal code, although she now contends that she was not acting disorderly. Plaintiff sued Defendants Giannini, Hoffman and Wysocki for excessive force, bystander liability, and conspiracy, and brought a <u>Monell</u> claim against the City of Camden, alleging multiple policies or customs in violation of her constitutional rights. The motion for summary judgment is unopposed, except as to the excessive force claim against Defendant Giannini.

The Court will grant summary judgment on all counts that Plaintiff does not oppose. The key remaining inquiry for the Court is whether disputes of material fact preclude the entry of summary judgment or determination of qualified immunity on behalf of Defendant Giannini. Because the Court finds that disputes of fact exist bearing on whether it would be clear to Patrolman Giannini that he violated Plaintiff's clearly established constitutional rights, the Court will deny the motion for summary judgment as to the excessive force claim against Giannini.

**II. Background**

On June 5, 2010, Plaintiff Ruggerio was socializing with

friends in a parking lot outside of the Susquehanna Bank Center, a concert venue in Camden, N.J. (Statement of Undisputed Facts, Def. Mot. Br. [Docket Item 14-1] at 6.[1]) Plaintiff testified that she had consumed, at most, one beer, and asserts she was not intoxicated. (Ruggerio Dep. 65:11-15; Pl. Ex. D at 4; Pl. Opp'n at 2.) A fight broke out next to Plaintiff. (Def. Mot. Br. at 6.)

The parties do not agree what happened next. Patrolman Giannini, who responded to the disturbance, testified that he did not recall the incident,[2] and Defendants offer no further details about what occurred. (Giannini Dep. at 33:19-34:7.) Plaintiff testified she was not involved in the fight and was backing away from the commotion when she lost her sandal and stooped to retrieve it. (Ruggerio Dep. at 75:5-16.) She asserts that Patrolman Giannini cursed at her, punched her multiple times,

---

[1] Defendants' "Statement of Undisputed Facts" is Section II of their motion brief, not a separate document.

[2] Giannini testified as follows:

Q: Okay. Do you know what your shift -- when you started your shift that day on June 5th, 2010?
A: No.
Q: Do you know if you worked during the day for Camden City then working the evening for the venue?
A: No.
Q: Do you recall this incident?
A: Do I?
Q: With Ana [sic] Maria Ruggerio?
A: Do I recall the incident?
Q: Yes.
A: No.

(Giannini Dep. at 33:19-34:7.)

pushed her to the ground, grabbed her ponytail and pressed her face against the ground. (Ruggerio Dep. at 75:5-77:13.) Plaintiff testified she was not acting disorderly and did nothing to resist any commands of Giannini or give him cause to use force. (Id. at 71:23-24, 77:11-13.)

Patrolman Giannini issued a summons to Plaintiff for disorderly conduct in violation of N.J.S.A. § 2C:33-2. (Def. Ex. B.) The summons itself contains no description of Plaintiff's conduct. On June 28, 2010, Plaintiff pleaded guilty to a lesser charge of disorderly conduct under the Code of the City of Camden, art. 1, § 395-8 ("Disturbances near quiet facilities"), and was ordered to pay a $500 fine, plus $33 in costs. (Def. Ex. C.) Plaintiff testified that she pleaded guilty on advice of counsel but was not acting disorderly. (Ruggerio Dep. at 69:18-24, 71:23-24.)

Plaintiff presented to the Emergency Department of Aria Health, Torresdale Campus, in Philadelphia, asserting that the Camden police assaulted her. (Pl. Ex. D [Docket Item 18] at 2.) The medical report contains observations of "moderate tenderness on the bilateral temples and Rt cheek," "mild-moderate tenderness mid upper back," "mild abrasion in the Rt knee and Rt posterior shoulder," and "mild swelling tenderness and ecchymosis to right maxilla no crepitus." (Id. at 3-4.) Plaintiff complained of "lightheadedness/dizziness, +nausea." (Id.) Her doctor prescribed

medication for muscle pain. (Id. at 2.)

Plaintiff filed a four-count Complaint in this Court.[3] She alleges excessive force, bystander liability, and conspiracy against Defendants Giannini, Hoffman, and Wysocki, pursuant to 42 U.S.C. § 1983, for violations of the Fourth Amendment to the U.S. Constitution.[4] (Am. Compl. ¶¶ 18-36.) She also brings a Monell claim[5] against the City of Camden alleging that the city has a policy or custom of "condoning and/or acquiescing in the violation of constitutional rights of citizens," and a policy or custom of "systematically failing to properly train, supervise and discipline its police officers and detectives . . . regarding the appropriate procedures for crowd control and protecting the constitutional rights of individuals . . . ." (Am. Compl. ¶¶ 38-39.)

Defendants now move for summary judgment on all counts, urging dismissal of the § 1983 claims because Plaintiff's Amended Complaint contains insufficient factual allegations to support such claims. (Def. Mot. Br. at 11.) Defendants also seek summary

---

[3] This Court has jurisdiction under 28 U.S.C. §§ 1331 & 1343.

[4] These charges are the first three of four counts in the Amended Complaint; however, they are labeled "Count I" (excessive force), "Count III" (bystander liability), and "Count V" (conspiracy). No "Count II" appears in the Amended Complaint, and Count IV (Monell claim) appears after Count V (see Am. Compl. ¶¶ 37-42).

[5] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

judgment on the grounds that Defendants Giannini, Hoffman, and Wysocki are entitled to qualified immunity. (Id. at 15-16.) Lastly, Defendants argue that the claims against the policemen are barred by Heck v. Humphrey, 512 U.S. 477 (1994), because Plaintiff's municipal court conviction precludes prosecution of her § 1983 claims. (Def. Mot. Br. at 18.)

In response, Plaintiff signals her willingness to concede summary judgment on all but the excessive force claim against Patrolman Giannini:

> Plaintiff is not going to oppose Defendants' Motion for Summary Judgment as to Detective Hoffman and Lt. Wysocki in Count I of Plaintiff's Amended Complaint, and is not going to oppose the Motion for Summary Judgment as to Counts II, III, IV of Plaintiff's Amended Complaint. As will be developed below, Plaintiff does oppose Defendant's Motion for Summary Judgment as to Defendant, Patrolman Giannini, in Count I of Plaintiff's Amended Complaint. Accordingly, Plaintiff's Brief in Opposition will only address the factual and legal issues related to Plaintiff's claim for Excessive Force against Patrolman Giannini.

(Pl. Opp'n at 1.)[6]

Defendants did not file a reply brief.

## III. Standard of review

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[6] Plaintiff's references to Count numbers does not match her Amended Complaint, however Plaintiff's opposition defines "Counts II, III, [and] IV" as the claims for bystander liability, conspiracy and Monell violations, respectively. (Pl. Opp'n at 1.)

P. 56(a). A dispute is "genuine" if, based on the evidence in the record, a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. Id. A court will view evidence in the light most favorable to the non-moving party and draw "all justifiable inferences" in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## IV. Discussion

Excessive force claims against law enforcement officers in making an arrest are analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). Reasonableness is to be assessed by an objective standard of a reasonable officer on the scene; the actual officer's intent or motivation is irrelevant. Id. at 396-97. Because reasonableness depends on a careful analysis of the facts and circumstances of the use of force, and because the Court lacks a clearly defined rule for categorizing conduct, reasonableness "'should frequently remain a question for the jury,'" however "'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (quoting Abraham v. Raso, 183 F.3d 279,

290 (3d Cir. 1999)).

## A. Qualified immunity

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The analysis consists of two steps, although courts have discretion "to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." Id. at 242. First, the court must decide whether the facts shown make out a violation of a constitutional right. Id. at 232. If so, the court must decide whether the right at issue was "clearly established," at the time of the defendant's alleged misconduct, id., meaning "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," immunity questions should be decided "at the earliest possible stage in litigation." Pearson, 555 U.S. at 231-32 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), and Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

However, this "imperative . . . is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002). In Curley, the plaintiff, who had been shot mistakenly by a police officer, sued under § 1983 alleging that the officer's conduct violated the plaintiff's Fourth Amendment right to be secure against unreasonable seizures. Id. at 277. The Third Circuit recognized that while "it is for the court to decide whether an officer's conduct violated a clearly established constitutional right, . . . the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue." Id. at 287. Because the parties had very different accounts of the circumstances of the shootings, and those disputes had a direct bearing on what information the officer had at the time of the shooting, which in turn affected the constitutional analysis, the Third Circuit held that a "jury must resolve these issues before a court can determine whether it would have been clear to a reasonable officer that [the officer's] conduct was unlawful." Id. at 282-83. Viewing the evidence in the light most favorable to the plaintiff, the Third Circuit concluded that it was premature to decide the asserted qualified immunity defense. Id.

Here, Defendants argue that Patrolman Giannini did not violate Plaintiff's constitutional rights, and, if he did, it would not have been clear that Giannini's actions were unlawful. (Def. Mot. Br. at 16.) Defendants argue that Plaintiff "stated in her plea" before the Camden Municipal Court that "she was at the scene of a fight and acted disorderly towards the officer." (Id.) Defendants contend that the officers "only came to the scene because they were dispatched there to stop a fight in progress," and Plaintiff admits she was "watching a fight" in the parking lot. (Id.) Defendants thus conclude that Giannini's "actions were reasonable under the circumstances" and he "handled the matter in an appropriate manner as any reasonable officer would." (Id.)

Plaintiff has a much different account. She testified that she was not participating in the fight, but was backing away from the commotion and picking up her sandal when she was punched twice by Patrolman Giannini, who knocked her to the ground, pulled her hair and pressed her face into the pavement. She testified that she was not resisting any commands of Giannini, not acting disorderly, and gave no cause for Giannini to use force. She asserts she was not attempting to flee and posed no threat to Giannini or others. (Pl. Opp'n at 18.)

Although Plaintiff pleaded guilty to a municipal violation for disorderly conduct, the record does not contain evidence of what Plaintiff did to warrant the summons. A wide range of

10

conduct is captured by the municipal provision: "No person shall, by noisy or disorderly conduct, disturb or interfere with the quiet or good order of any place of assembly, public or private, including, but not limited to, any school, house of worship, library or reading room." CAMDEN, N.J., CODE art. 1, § 395-8; (see also Def. Mot. Br. at 18 n.3). Even if Plaintiff engaged in conduct in violation of that provision, she did not necessarily engage in conduct that warranted the force allegedly used by Patrolman Giannini. Accepting Plaintiff's testimony as true, and drawing all inferences in her favor, she was attempting to remove herself from a potentially dangerous situation and did not pose a threat to herself, Giannini or others. It is certainly plausible that, at trial, Plaintiff could convince a jury that by the time Giannini reached Plaintiff, his use of force violated her constitutional rights. Patrolman Giannini testified at his deposition that he could not recall the incident, and, thus, could not recall why he issued a summons to Plaintiff. (Giannini Dep. at 37:6-38:4.) Defendants do not attempt to describe the circumstances warranting Giannini's use of force, other than to say that Plaintiff was in the vicinity of a fight, but officers may not assault bystanders simply because their proximity to a fight. Viewing the evidence in the light most favorable to the Plaintiff, as the Court must, there are disputes of fact as to what Plaintiff did to warrant a summons that bear directly on the

question of whether the use of force was objectively reasonable. Plaintiff's testimony and documentary evidence raise a jury question of whether Giannini's use of force was reasonable.

Because disputes of material fact exist, bearing directly on whether Patrolman Giannini violated clearly established constitutional rights, the Court cannot make a qualified immunity determination at this time. A jury must make factual findings as to the circumstances surrounding the use of force before the Court "can determine whether it would have been clear to a reasonable officer that [Giannini's] conduct was unlawful." Curley, 298 F.3d at 283. The Court is unable at this time to view the "unresolved factual issues in the light most favorable to [Plaintiff] and still find that [Giannini's] conduct was protected under the qualified immunity doctrine." Id. Summary judgment on the grounds that Patrolman Giannini is entitled to qualified immunity is denied without prejudice.

**B. Whether Plaintiff's claim is barred by Heck v. Humphrey**

Defendants next argue that Plaintiff's claim is barred by her guilty plea in the municipal court. In support, Defendants quote the holding in Heck v. Humphrey, 512 U.S. at 486-87:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal

12

court's issuance of a writ of habeas corpus, 28 U.S.C. §
2254. A claim for damages bearing that relationship to a
conviction or sentence that has <u>not</u> been so invalided is
not cognizable under § 1983.

(<u>See</u> <u>also</u> Def. Mot. Br. at 17.) The U.S. Supreme Court further
stated in <u>Heck</u> that a "district court must consider whether a
judgment in favor of the plaintiff would necessarily imply the
invalidity of his conviction or sentence . . . ." <u>Id.</u> at 487.
Here, Defendants argue that the "Municipal Court conviction still
remains in effect and precludes prosecution" of the excessive
force claim. (Def. Mot. Br. at 18.) According to Defendants, when
"Plaintiff pled guilty she confirmed the lawfulness of her
arrest, more specifically, she confirmed the probable cause
supporting her arrest." (<u>Id.</u>) Defendants conclude the claim is
barred.

    <u>Heck v. Humphrey</u> does not bar Plaintiff's claim. Plaintiff
rightly observes that the Third Circuit rejected similar
arguments in <u>Nelson v. Jashurek</u>, 109 F.3d 142 (3d Cir. 1997), and
<u>Lora-Pena v. FBI</u>, 529 F.3d 503 (3d Cir. 2008). In <u>Lora-Pena</u>, the
plaintiff alleged that an officer used excessive force against
him in violation of the Fourth Amendment. 529 F.3d at 505.
Because the plaintiff was found guilty of assaulting a federal
officer and resisting arrest, the district court found that the
plaintiff's excessive force was barred by <u>Heck</u>. <u>Id.</u> at 506. The
Third Circuit vacated the lower court's order, stating that it
was "conceivable that a law enforcement officer, acting within

13

the scope of his official duties, may use force that is excessive in effectuating a lawful arrest." Id. (citing Nelson, 109 F.3d at 145-46.) The court added that "convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions." Id.

The same is true in this case. A conviction for violating the municipal code is not necessarily inconsistent with Patrolman Giannini using excessive force in reaction to Plaintiff's allegedly disorderly conduct. In other words, a judgment in favor of Plaintiff on her excessive force claim would not necessarily imply the invalidity of her conviction. See Heck, 512 U.S. at 487. Summary judgment is denied on the grounds that Plaintiff's guilty plea bars her excessive force claim.

### C. All other claims

Summary judgment is granted on all other claims: excessive force against Defendants Hoffman and Wysocki ("Count I"), bystander liability ("Count III"), conspiracy ("Count V"), and a Monell violation ("Count IV"). Plaintiff expressly opted not to oppose the entry of summary judgment on these counts (Pl. Opp'n at 1), and the Court agrees that the cited portions of the record do not create genuine issues of fact to preclude the entry of summary judgment on these counts.

### V. Conclusion

For the reasons explained above, summary judgment is denied as to the excessive force claim against Patrolman Giannini and granted as to all other claims against all other Defendants. An accompanying Order will be entered.


**November 6, 2013**          **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge